1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **EASTERN DISTRICT OF CALIFORNIA**

10

11  RAYMOND W. HYDE,                          )   Case No.: 1:12-cv-877 BAM
                                              )
12              Plaintiff,                     )   **ORDER ON PLAINTIFF'S**
                                              )   **SOCIAL SECURITY COMPLAINT**
13       v.                                    )
                                              )
14  CAROLYN W. COLVIN, Acting                  )
    Commissioner of Social Security,           )
15                                             )
                Defendant.                      )
16  _____  )

17

18                           **INTRODUCTION**

19          Plaintiff Raymond Hyde ("Plaintiff") seeks judicial review of a final decision of the

20  Commissioner of Social Security ("Commissioner") denying his application for supplemental security

21  income ("SSI") and disability insurance benefits ("DIB") pursuant to Titles II and XVI of the Social

22  Security Act.[1]  The matter is currently before the Court on the parties' briefs, which were submitted,

23  without oral argument, to Magistrate Judge Barbara A. McAuliffe.  The Court finds the decision of the

24  Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole

25

26

27  _____
    [1]       Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule
28  25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the
    defendant in this suit.

                                              1

and based upon proper legal standards.  Accordingly, this Court affirms the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

On September 15, 2010, Plaintiff filed his current applications for SSI and DIB alleging disability beginning June 11, 2006.  AR 189-190.[2]  Plaintiff's applications were denied initially and on reconsideration.  AR 12-24.  Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  ALJ Sharon Madsen held a hearing on January 24, 2012 and issued an order denying benefits on January 27, 2012.  AR 9-22.  Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision.  AR 1-3.  This appeal followed.

### Hearing Testimony

The ALJ held a hearing on January 24, 2012, in Fresno, California.  AR 23.  Plaintiff appeared and testified.  AR 23.  He was represented by attorney Robert Hubbs.  AR 9.  Impartial Vocational Expert ("VE") Thomas Dachelet also testified.  AR 9.

Plaintiff is an unemployed thirty-nine year old man who lives with his brother and sister in his mother's former home.  AR 28. He is 6′2″ and weighs 395 pounds.  He is morbidly obese and suffers from depression, gout, shoulder and back pain.  Plaintiff is also missing his right thumb.

At the hearing, when asked about his activities of daily living, Plaintiff testified that he does not drive because his license is suspended, and therefore, he relies on his sister for transportation on her days off. Plaintiff stated that he could shower, dress, and prepare food in the microwave independently.  AR 29.  He can also manage his own finances.  AR 40.  However, Plaintiff testified that he could not perform household chores like shopping or the laundry and that his aunt came to the house to cook his food and to clean his clothes. Plaintiff stated that he does not go shopping because: "I just don't want to get there amongst other people. I mean, I'd rather stay in my own little cubby corner." AR 40.  Plaintiff further explained that he has no problem getting along with people.

---

[2]     References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1    However, he did not engage in any social activities and did not have friends outside of his family.  AR
2    29-30.

3          When asked about his physical impairments, Plaintiff claimed that his shoulder hurt "basically
4    all the time." AR 33.  He claimed that moving it in any direction hurt and that he has problems
5    reaching forward due to the pain.  AR 48.  Plaintiff stated the only way to stop the pain was to hold his
6    arm. He also stated that he took Vicodin EX and Somas to "take the edge off" his pain.  AR 33-34.
7    Doctors have not recommended any further treatment besides medication for his shoulder.  AR 42.

8          When asked about his legs, Plaintiff stated he had problems with his legs every day. AR 44.
9    Plaintiff could not specify which activities caused his leg pain, but stated that when he woke up, they
10   hurt.  AR 44-45. Walking makes the pain worse, causing the pain to shoot up his feet and through the
11   back of his legs.   AR 45. Plaintiff also suffers from generalized back pain, but had difficulty
12   pinpointing where the pain was located.  AR 36.   When asked if his providers had discussed the
13   possibility of surgery, Plaintiff claimed that a doctor was going to send him to a specialist, but that the
14   specialist left town.   AR 50. Plaintiff does not currently have a referral to a surgeon or to an
15   orthopedist. He acknowledged that his primary care doctor did not administer any injections for his
16   back pain.  AR 51.   To treat his back pain, Plaintiff primarily uses a heating pad, medication, and
17   spends most of the day lying down.  AR 25-26.

18         Plaintiff also suffers from gout "flare ups" about once a month.  AR 36.  Plaintiff's gout causes
19   swelling of his toes and heels. AR 36. He said the flare ups lasted a day and a half. Due to the
20   swelling, he must wear socks around the house to prevent falling. AR 36. He claimed that when he had
21   a gout flare-up, he would not leave the house and could only walk as far as the kitchen or the
22   bathroom.  AR 55.  Plaintiff also suffers symptoms related to his weight.  He has frequent knee pain,
23   and he testified that he tires easily and overheats constantly because of his weight.  AR 51. He claimed
24   that he tried dieting and had lost five pounds, but acknowledged that he spent all day in bed and did
25   not exercise so he regained the weight.  AR 39.  Plaintiff said he spent a large amount of time lying in
26   bed watching television.  AR 30.

27         When asked about his physical limitations, Plaintiff testified he could lift and carry ten or
28   twelve pounds using both hands.  AR 36. He said he could only sit for 30 minutes before he would

need to stand.  AR 37.  Plaintiff testified that he did not know how long he could stand, but he stated he could walk 15 to 20 minutes at a time and for about the length of a city block. AR 38.

Thereafter, the ALJ elicited testimony of the vocational expert ("VE") Thomas Dachelet.  AR 52-70.  The VE testified that Plaintiff previously worked as (1) an in-home support service specialist; (2) printing press operator; and (3) a bag printer.  AR 52.  The VE classified all of Plaintiff's past work as medium.  AR 52-53.

The ALJ asked the VE hypothetical questions, contemplating an individual of the same age, education, and work background as Plaintiff.  AR 53.  This individual could lift 20 pounds occasionally and lift 10 pounds frequently.  He can sit, stand, or walk with frequent stooping, crouching, crawling, climbing, and kneeling.   Additionally, this individual could occasionally reach with his non-dominant hand.  The VE testified that a person with such limitations could not perform Plaintiff's past relevant work, but could perform other jobs in the national economy such as packing line worker (light, unskilled, DOT number 753.687.038); garment sorter (light, unskilled, DOT number 222.687.014); and ampoule filler (light, unskilled, DOT number 559.685.018).  AR 55.

In a second hypothetical question, the ALJ asked the VE to consider the same individual except that this person could sit for 6 hours, stand or walk for 2 hours, and this individual could occasionally stoop, crouch, crawl, climb, and kneel. This individual could perform frequent handling, fingering, and feeling; and is limited to simple routine tasks. The VE testified that a person with such limitations could perform other jobs in the national economy such as weight tester (sedentary, unskilled, DOT number 539.485.010); ampoule sealer (sedentary, unskilled, DOT number 559.687.014); and leaf tier (sedentary, unskilled, DOT number 529.687.138).  AR 57.

**Medical Record**

The entire medical record was reviewed by the Court.  AR 239-508.  The medical evidence will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard.  AR 9-17.  More particularly, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since June 11, 2006.  AR 11.

4

Further, the ALJ identified morbid obesity, left shoulder impingement with status post arthroscopy, resection of clavicle, and decompensation in 2007, history of right thumb degloving with skin graft in 1998, lumbar degenerative disc disease, thoracic degenerative disc disease, gout, and depression as severe impairments. AR 11. Nonetheless, the ALJ determined that the severity of the Plaintiff's impairments did not meet or exceed any of the listed impairments. AR 11.

Based on her review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to lift and carry 10 pounds occasionally and 10 pounds frequently; stand and/or walk for 2 hours; and sit for 6 hours in an 8-hour workday. Plaintiff can occasionally reach with his left upper extremity and frequently handle, finger, and feel with his right upper extremity. Plaintiff can also complete simple routine tasks. AR 13. The ALJ subsequently found that Plaintiff was unable to perform his past relevant work. AR 16. However, based on Plaintiff's age, education, work experience, and RFC, the ALJ determined that significant jobs exist in the national economy that Plaintiff could perform. AR 16. The ALJ, therefore, found that Plaintiff was not disabled under the Social Security Act. AR 16.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commission's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commission must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and

if the Commission's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

Here, Plaintiff argues that the ALJ erred in (1) rejecting the opinion of examining physician Dr. Roberts and (2) discrediting Plaintiff's subjective complaints. (Doc. 15).

**DISCUSSION**[3]

**1.      The ALJ Did Not Err in Weighing Dr. Roberts' Opinion**

First, Plaintiff argues the ALJ erred in rejecting the opinion of consultative psychologist, Harold Roberts, M.D.  (Doc. 15).

With respect to Dr. Roberts' opinion, ALJ Madsen found as follows:

In September 2011, consultative psychologist Harold Roberts, Psy. D. noted complaints of depression and bereavement.  The claimant reports that his depression was a result of his father's suicide in 2009.  His depression became worse with the death of his mother in 2011.  He stated that he had never received any form of mental health treatment.  He had never received psychiatric hospitalization.  He states that he began to cut himself after the death of his mother.  There were visible cut marks on his left arm.  He reported that he lived with his sister.  He was not dating and he had no friends.  He reported that he could not sleep.  He had a high school diploma.  He said that he attended special

---

[3]        The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

schools for dyslexia.  He reported that he had been a caretaker for one year.  He worked in a diary [sic] farm for a couple of months.  He reported difficulty walking.  He stated that he was easily fatigued.  He was easily overwhelmed.  He had a low self-esteem. He reported that he felt very nervous.  He lacked motivation to do daily activities.  He was able to shower and dress himself.  His mood was depressed and his affect was congruent with his mood.  A mental status examination was essentially normal.  Dr. Roberts diagnosed depressive disorder and bereavement.  He assigned a GAF of 60, indicated moderate symptoms.  Dr. Roberts concluded that the claimant was able to perform simple or complex tasks.  He was able to interact with supervisors, coworkers, or the public.  He was moderately impaired in the ability to perform work on a consistent basis, maintain regular attendance, complete a workweek without interruption, and deal with the usual stress in a workplace.  This opinion has been given little weight because it is inconsistent with the medical record that shows the claimant is able to perform simple work on a consistent basis.  He is able to adequately adjust and adapt.  The claimant does not receive specialized mental health treatment.  There are rare notations of depression in the medical chart.  AR 15.

Specifically, Plaintiff criticizes the ALJ for rejecting Dr. Roberts' opinion that Plaintiff is moderately limited in his ability to perform work activities; maintain regular attendance in the workplace; and deal with the usual stress encountered in a competitive workplace.  AR 504.

At the outset, the Court notes that contrary to Plaintiff's contention, the ALJ did not outright reject Dr. Roberts' opinion. The ALJ accepted Dr. Roberts' opinion "to the extent that Plaintiff is able to perform simple and routine work on a consistent basis over an eight-hour work day and 40-hour work week." AR 16.   However, overall, the ALJ afforded Dr. Roberts' opinion "little weight" for three reasons: (1) Dr. Roberts' opinion was contrary to the weight of the medical evidence; (2) Dr. Roberts' opinion did not reflect medical evidence and Plaintiff's testimony concerning his abilities to adjust and adapt; and (3) the ALJ found that Plaintiff lacked any mental health treatment history.  AR 15.  These are sufficient reasons to reject portions of Dr. Roberts' opinion.

The medically supported opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984).  As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician.  *Pitzer*, 908 F.2d at 506. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only

be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer*, 908 F.2d at 506 n. 4; *Gallant*, 753 F.2d at 1456. In some cases, however, the ALJ can reject the opinion of a treating or examining physician, based in part on the testimony of a nonexamining medical advisor. *E.g., Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989); *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995). For example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the opinions of Magallanes's treating physicians . . .." *Magallanes*, 881 F.2d at 752. Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ also relied on laboratory test results, on contrary reports from examining physicians, and on testimony from the claimant that conflicted with her treating physician's opinion. *Id.* at 751-52. The opinions of nonexamining physicians are substantial evidence where they are supported by clinical findings and objective tests. *Id.*

Here, the ALJ gave Dr. Roberts' findings little weight because they were inconsistent with Plaintiff's medical records; and too restrictive. AR 15. Instead, the ALJ gave greater weight to the opinion of the only other mental health source, state agency physician Dr. Garcia. Dr. Garcia noted that "given the lack of treatment history and failure to seek treatment and no cognitive or emotional problems demonstrated on direct observation," Plaintiff retained the capacity to perform simple repetitive tasks. AR 522. Dr. Garcia noted that Plaintiff's primary issue appears to be his motivation/bereavement and not chronic persisting depression. AR 522. The ALJ agreed with Dr. Garcia that Plaintiff can perform simple work, because his finding was consistent with the medical record, opinion evidence, and overall evidence of record. AR 16. As Dr. Garcia's opinion was contrary to Dr. Roberts, the ALJ had the authority to resolve that conflict. He did so, setting forth legitimate and specific reasons for his findings which are supported by the record.

First, the ALJ noted that the record established that Plaintiff could adjust and adapt. For example, when Plaintiff was asked about his activities of daily living, Plaintiff explained that he could

follow written and spoken directions; prepare his own meals including frozen dinners, sandwiches and cereal; shop in stores; and help with light chores.  AR 228-29, 231, 263. Despite his depression, Plaintiff socialized and got along with family members, friends, and neighbors.  AR 230, 262, 264. Dr. Roberts described Plaintiff as alert, friendly and cooperative with good eye contact, normal facial expressions, and adequate grooming, noted that Plaintiff interacted appropriately with the examiner and office staff and opined Plaintiff could interact with co-workers and the public.  AR 15, 500, 504. Dr. Roberts also diagnosed Plaintiff with a GAF of 60, indicating he functioned well from a psychiatric standpoint.  AR 15, 504.   Further at the hearing, Plaintiff testified that in order to accommodate his thumb, Plaintiff used his other fingers to pick up small objects, pre-tied his shoe laces, and had buttoned shirts sewn closed. AR 37-38, 48.   This evidence contradicts Dr. Roberts' findings that Plaintiff is incapable of dealing with the stressors of the work day and perform work on a consistent basis.   The Court finds that this contradiction constituted a legally sufficient reason for giving little weight to Dr. Roberts' opinion.

Next, the ALJ noted that Dr. Roberts' opinion was unsupported because Plaintiff's medical record showed only rare notations of depression and a lack of mental health treatment for severe symptoms of depression.  AR 15-16.  Indeed, Plaintiff conceded to Dr. Roberts that his symptoms were only moderate, denied experiencing severe depressive symptoms, and never sought any form of mental health treatment.  AR 14-15, 358, 500-501, 503. Given the lack of consistency between Dr. Roberts' moderate attendance-related limitations and the overall record, the ALJ again reasonably discounted them. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 1995) (after discussing the claimant's medical history and treatment in detail, the ALJ properly found an "incongruity" between the doctor's questionnaire responses and the medical records"); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (ALJ properly rejected examining physician's opinion that the claimant was disabled by her physical impairments because it lacked objective support and was based on the claimant's subjective complaints.)

Overall, the ALJ articulated several specific and legitimate reasons for rejecting portions of Dr. Roberts' opinion.  The ALJ credited Dr. Roberts' opinion that Plaintiff has moderate limitations in the areas of concentration, persistence, and pace to the extent that the claimant is able to perform simple

and routine work consistently.   However, the ALJ did not adopt Dr. Roberts' further moderate limitations because they were inconsistent with the weight of the medical evidence.   It is not necessary for the ALJ to agree with everything an expert witness says in order to hold that his testimony contains substantial evidence, where the bases for the opinion were supported by objective medical evidence. *Magallanes*, 881 F.2d at 753.  The ALJ is the "final arbiter with respect to resolving ambiguities in the evidence." *Tommasetti*, 533 F.3d at 1041-42.  Accordingly, the Court will not reverse or remand the ALJ's decision for failure to properly weigh Plaintiff's examining physician's medical opinion testimony.

**2.      The ALJ Gave Sufficient Reasons to Reject Plaintiff's Subjective Testimony**

Next, Plaintiff contends the ALJ gave insufficient reasons for rejecting his subjective complaints.   (Doc. 14 at 7).   Specifically, Plaintiff argues that the ALJ discounted his subjective complaints solely due to the lack of objective evidence.  (Doc. 15 at 10).   The Court disagrees.

In general, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can constitute "specific and substantial reasons that undermine . . . credibility." *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).   The Ninth Circuit explained, "while subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2002) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis").

The ALJ provided several clear and convincing reasons for concluding Plaintiff's testimony was not credible.   Initially, the ALJ indeed found Plaintiff's testimony only partially credible in light of the objective medical evidence available in the file.   AR 13-16. *See* 20 C.F.R. §§ 404.1529(b), 416.929(b) (medical evidence must reasonably support subjective claims); *see also Rollins*, 261 F.3d at 857 (citing 20 C.F.R. § [416.929(c)(2)] ("the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects"); *Johnson v. Shalala*, 60 F.3d

1428, 1434 (9th Cir. 1995) (ALJ may consider inconsistencies between a claimant's testimony and the evidence in rejecting subjective statements).

Specifically, the ALJ found Plaintiff's claims of disabling shoulder pain unsupported by the record. AR 13-14, 209. The ALJ noted that a May 2006 MRI revealed an unremarkable left shoulder (AR 13, 532) and March 2007 surgical findings were essentially normal. AR 13, 355. The ALJ further noted that following surgery, Plaintiff received limited treatment for shoulder pain and no additional interventions or referrals were made. AR 13-14, 326-27, 337-38. In a 2011 assessment, Dr. Sorenson, Plaintiff's treating physician, indicated that Plaintiff had no significant limitations in reaching. AR 526. In January 2011, Plaintiff conceded that post surgery he gained full range of motion of the shoulder region yet claimed in self reports that his shoulder injury limited his ability to reach over head. AR 227, 231, 259, 370, 501. The ALJ also reasonably questioned the veracity of Plaintiff's claim of disabling back pain given the objective record. January 2011 x-rays showed no nerve root compression or spinal stenosis. AR 15, 314, 366. The consultative examination showed Plaintiff had normal gait and only mild tenderness in the lumbar spine. AR 14-15, 371-73. Plaintiff could walk without an assistive device, get off and on the examination table without assistance and exhibited full motor strength with normal muscle bulk and tone. AR 14, 371-73, 500, 504. Plaintiff further conceded that he had not undergone any surgery nor received any epidural injections. AR 370. Based on these findings, it was not error for the ALJ to conclude that Plaintiff's credibility concerning his subjective complaints was reduced by the conflicting objective medical evidence.

While the ALJ discredited Plaintiff's credibility, in part, because his subjective complaints were not supported by the medical record, the ALJ did not base the credibility evaluation solely on the fact that the medical record did not support the degree of symptoms alleged by Plaintiff. Here, the ALJ cited other factors as well. In rejecting Plaintiff's subjective complaints, the ALJ noted that Plaintiff failed to consistently present with allegations of disabling depression. AR 15. In this, the ALJ was correct. On multiple occasions throughout his treatment history, Plaintiff had the opportunity to complain to his doctors of severe depression. Instead, Plaintiff rarely mentioned his depression. The ALJ also noted that Plaintiff did not seek mental health treatment. AR 15. Indeed, Plaintiff does

not reference a single instance in the record where he sought mental health treatment prior to the administrative hearing.  AR 15.

Credibility determinations "are the province of the ALJ," and where the ALJ makes specific findings justifying a decision to disbelieve an allegation of excess pain which is supported by substantial evidence in the record, this Court does not second-guess that decision. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) (citation omitted).  By considering Plaintiff's minimal treatment history, inconsistent pain allegations, and the medical record, the ALJ set forth clear and convincing reasons for discounting the credibility of Plaintiff's subjective complaints. Thus, the ALJ satisfied her burden to make "a credibility determination with findings sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit [the] claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin, Commissioner of Social Security, and against Plaintiff, Raymond Hyde.

IT IS SO ORDERED.

Dated:   __September 18, 2013__          _____ /s/ *Barbara A. McAuliffe* _____
                                                            UNITED STATES MAGISTRATE JUDGE